14 CV 6478

JUDGE SEIBEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

INTERNATIONAL BUSINESS MACHINES :
CORPORATION,
                                                        :       COMPLAINT
                    Plaintiff,
                                                        :       Case No. _____
            -against-
                                                        :       RECEIVED
CHRISTER JOHNSON,                                               AUG 1 4 2014
                                                        :       U.S.D.C. S.D.N.Y.
                    Defendant.                                  CASHIERS
-----------------------------------------------------------X

Plaintiff, International Business Machines Corporation ("IBM"), by its attorneys, Putney, Twombly, Hall & Hirson LLP, as and for its Complaint against Defendant, Christer Johnson ("Defendant" or "Johnson"), alleges as follows:

## IDENTITY OF THE PARTIES

1. IBM is a corporation duly organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

2. Defendant Johnson is an individual domiciled in the State of Virginia, resident at 1436 Montague Drive, Vienna, VA 22182.

3. Johnson was employed by IBM in the position of Partner, North America, Advanced Analytics Leader, and was based in Herndon, Virginia.

## JURISDICTION AND VENUE

4. This is a diversity matter between citizens of the United States, namely Plaintiff in New York, and Defendant in Virginia, and the amount in controversy exceeds $75,000. Jurisdiction is appropriate under 28 U.S.C. § 1332(a)(2). Moreover, the parties have contractually

agreed to the Jurisdiction of this Court by the terms of the contracts referred to below as the IBM 2001 Long-Term Performance Plan ("the IBM Plan"), dated May 7, 2002 as amended through August 1, 2007, the various Equity Award Agreements ("EAA") executed during the course of Defendant's employment at IBM, and the Terms and Conditions of "Your Equity Award: Effective June 8, 2011" ("Terms and Conditions").

5. Venue is proper in this Judicial District by Plaintiff's headquarters' residence, the parties' agreements and defendant's consent in the aforementioned IBM Plan, the EAA, and Terms and Conditions.

## NATURE AND BACKGROUND OF THE ACTION

6. This is an action for monies due and owing to IBM by defendant as a result of the rescission by IBM of the stock options and equity awards (collectively "Awards"), previously granted defendant as further described herein.

7. During all relevant times herein, Johnson was a participant in the IBM Plan.

8. As stated in Section 1 thereof, termed "Objectives," the IBM Plan is "designed to attract, motivate and retain selected employees of, and other individuals providing services to, the Company. These objectives are accomplished by making long-term incentive and other awards under the Plan, thereby providing Participants with a proprietary interest in the growth and performance of the Company."

9. Defendant terminated his employment with IBM on or about December 17, 2012.

10. Shortly thereafter, Defendant commenced employment with Ernst & Young ("EY"), on information and belief, in December, 2012, and is a Principal in EY's National Advisory Practice, Enterprise Intelligence, Analytics.

2

11. EY is engaged in business activity which is competitive with Plaintiff.

**Contractual Grounds for
Rescission of Grants and Awards**

12. During his employment with IBM Plaintiff was given the opportunity to receive Awards under the terms and conditions of the IBM Plan, the EAA, and the Terms and Conditions cited in paragraph 4 hereto, and further described herein, and in fact did receive awards as further described herein.

13. As a result of his employment by EY, IBM is entitled to Cancel and Rescind Awards paid to Defendant, and has so rescinded these Awards.

14. As stated in relevant part in Section 13(a) of the IBM Plan, entitled "Cancellation and Rescission of Awards":

> Unless the Award Agreement specifies otherwise, the Committee may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, or if the Participant engages in any 'Detrimental Activity.' For purposes of this Section 13, "Detrimental Activity" shall include: (i) the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes <u>competitive</u> with the Company, or which organization or business, or the rendering of services to such organization or business, is or becomes otherwise prejudicial to or in conflict with the interests of the Company; (ii) the disclosure to anyone outside the Company, or the use in other than the Company's business, without prior written authorization from the Company, of any confidential information or material, as defined in the Company's Agreement Regarding Confidential Information and Intellectual Property, relating to the business of the Company, acquired by the Participant either during or after employment with the Company; . . . (vi) any attempt directly or indirectly to induce any employee of the Company to be employed or perform services elsewhere, or any attempt directly or indirectly to solicit the trade or business of any current or prospective customer, supplier or partner of the Company; . . . ." (emphasis supplied).

15. In addition, Section 13(b) of the IBM Plan provides, in relevant part, that:

> Upon exercise, payment or delivery pursuant to an Award, the Participant shall certify in a manner acceptable to the Company that he or she is in compliance with the terms and conditions of the Plan. In the event a Participant fails to comply with the provisions of paragraphs (a)(i)(viii) of this Section 13 prior to, or during the Rescission Period, then any exercise, payment or delivery may be rescinded within two years after such exercise, payment or delivery. In the event of any such rescission, the Participant shall pay to the Company the amount of any gain realized or payment received as a result of the rescinded exercise, payment or delivery, in such manner and on such terms and conditions as may be required, and the Company shall be entitled to set-off against the amount of any such gain any amount owed to the Participant by the Company.

16. The various EAA executed by Defendant during the course of his employment by IBM provide, inter alia, in a paragraph titled "Cancellation and Rescission" that "IBM may cancel, modify, rescind, suspend, withhold or otherwise limit or restrict this Award in accordance with the terms of the Plan, including, without limitation, canceling or rescinding this Award if you render services for a competitor prior to, or during the Rescission Period. You understand that the Rescission Period that has been established is 12 months."

17. As a condition of accepting his Awards, Johnson further agreed under the terms of the EAA in a paragraph titled "Accept Your Award" "that by your acceptance of this Award, all Awards previously granted to you under the Plan or other Long-Term Performance Plans are subject to the "Cancellation and Rescission" section of this Agreement. . . ."

18. The EAA states that "Your participation in the Plan is voluntary."

4

19. The Terms and Conditions stipulates that "You agree that the cancellation and rescission provisions of the Plan and your Equity Award Agreement are reasonable and agree not to challenge the reasonableness of such provisions, even where forfeiture of your Award is the penalty for violation."

20. The EAA by its terms incorporates both the Terms and Conditions and the IBM Plan into the Award.

## The Grant of Options and Awards

21. Defendant was granted and received stock options and restricted stock unit ("RSU") awards under the IBM Plan and the various Equity Award Agreements executed by Defendant during his employment with IBM, all of which became subject to the Cancellation and Rescission terms of the IBM Plan and the various EAA he executed during his employment.

22. Defendant exercised 500 stock options on December 3, 2012.

23. The value of these stock options when exercised resulted in a gain to Defendant in the amount of $47,795.

24. In addition, Defendant exercised 2,050 stock options on September 17, 2012.

25. The value of these stock options when received was $298,377.50

26. Defendant also exercised 139 RSUs on June 8, 2012.

27. The value of these RSUs when received was $26,954.88.

28. Defendant further exercised 122 RSUs on June 8, 2012.

29. The value of these RSUs when received was $23,658.24.

30. Defendant further exercised 98 RSUs on June 8, 2012.

31. The value of these RSUs when received was $19,004.16.

5

32. Defendant further exercised 234 RSUs on May 8, 2012.

33. The value of these RSUs when received was $47,122.92.

34. These options and awards were received within the 12-month Rescission Period set forth in the various EAA Defendant executed during his employment.

35. The total value of the gain received by Defendant from these Awards during the Rescission Period and subject to rescission is $462,912.70.

## Agreement to Jurisdiction and Venue and Reimbursement of IBM Legal Fees and Costs

36. Recipients of these Awards under the IBM Plan, Section 15(e) thereof, agree to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve any and all issues that may arise out of or relate to the Plan and the EAA.

37. Similarly, the Terms and Conditions document incorporated into the EAA, and referred to in paragraph 19 hereof, specifies the same jurisdiction and venue.

38. The IBM Plan specifies in Section 15(f) thereof, that if IBM prevails in an action to enforce the IBM Plan, the Plan participant such as Johnson "shall pay all costs and expenses incurred by the Company in connection with that action, including reasonable attorneys' fees . . . ."

39. Similarly, the "Terms and Conditions" document incorporated into the EAA, and referred to in paragraph 19 hereof contains the same language regarding costs, expenses and fees.

## Notice of Rescission

40. As noted above, Johnson's employment with EY constitutes Detrimental Activity under the IBM Plan as more fully stated in paragraph 14 hereof.

41. By virtue of Johnson's employment with EY within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM is entitled to and did rescind any awards made to Johnson during such 12-month period.

42. By letter dated April 30, 2013, IBM put Johnson on notice it rescinded the gains he received when he exercised the Awards stated in paragraphs 22 through 32 thereof within the 12 months preceding his employment by EY, in the amount of $462,912.70.

43. The letter stated in bold emphasis "**You are required to repay to IBM your gain equal to $462,912.70.**" It further stated a payment expectation date of May 27, 2013.

44. Johnson has failed and refused to make the requested payment to IBM, though duly demanded.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

45. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 44 hereof, inclusive, as though more fully stated herein.

46. On December 17, 2012, Johnson voluntarily terminated his employment with IBM.

47. Under the explicit terms of the IBM Plan, if Defendant chose to join a competitor of IBM within the Rescission Period of the EAA, he would forfeit the monetary value of all Awards under the IBM Plans.

48. The Rescission Period established under various EAA Defendant executed during his employment at IBM was 12-months "after any exercise, payment or delivery pursuant to an Award".

7

49.     Defendant was aware of this rescission provision at the time he resigned employment at IBM and became employed by EY.

50.     Johnson commenced employment with EY shortly after his resignation from IBM, on information and belief, in or about December, 2012, and therefore within the Rescission Period of 12-months after the acceptance of his grants and awards commencing in May, 2012 as further detailed above.

51.     EY is a competitor of IBM.

52.     Defendant's employment with EY constitutes Detrimental Activity under Section 13(a)(i) of the IBM Plan.

53.     By virtue of Defendant's employment with EY within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM was entitled to and did rescind any Awards to Johnson during such period.

54.     Thus, by letter dated April 30, 2013, IBM put Defendant on notice that all Awards exercised and received within the 12 months preceding his engaging in "Detrimental Activity" were subject to rescission in the amount of $462,912.70.

55.     IBM therein made due demand for payment by Defendant in the amount of $462,912.70, representing the total amount gained by Johnson through the aforesaid stock option exercises and awards as stated herein.

56.     Defendant has failed and refused to make the requested payment to IBM, though duly demanded by IBM.

57.     Accordingly, there is due and owing from Defendant to IBM the amount of $462,912.70.

58. Defendant has further contractually agreed to pay all costs and expenses incurred by IBM in connection with it prevailing in an action to enforce the IBM Plan.

59. Accordingly, upon IBM prevailing in this action, such costs, expenses and fees shall be paid by Defendant to IBM.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant in the amount of $462,912.70, as well as costs, interest, and attorneys' fees in an amount to be determined by the Court, and such other, further and different relief this Court deems just and proper.

Dated: New York, New York
August 14, 2014

PUTNEY, TWOMBLY, HALL & HIRSON LLP
Attorneys for Plaintiff

By: _____
Jerome P. Coleman (JC7818)
A member of the firm
521 Fifth Avenue
New York, NY 10175
(212) 682-0020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

INTERNATIONAL BUSINESS MACHINES : 
CORPORATION,

                Plaintiff, :    **COMPLAINT**

        -against- :    Case No. _____

CHRISTER JOHNSON, :

                Defendant. :
-------------------------------------------------------X

Plaintiff, International Business Machines Corporation ("IBM"), by its attorneys, Putney, Twombly, Hall & Hirson LLP, as and for its Complaint against Defendant, Christer Johnson ("Defendant" or "Johnson"), alleges as follows:

## IDENTITY OF THE PARTIES

1. IBM is a corporation duly organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

2. Defendant Johnson is an individual domiciled in the State of Virginia, resident at 1436 Montague Drive, Vienna, VA 22182.

3. Johnson was employed by IBM in the position of Partner, North America, Advanced Analytics Leader, and was based in Herndon, Virginia.

## JURISDICTION AND VENUE

4. This is a diversity matter between citizens of the United States, namely Plaintiff in New York, and Defendant in Virginia, and the amount in controversy exceeds $75,000. Jurisdiction is appropriate under 28 U.S.C. § 1332(a)(2). Moreover, the parties have contractually

agreed to the Jurisdiction of this Court by the terms of the contracts referred to below as the IBM 2001 Long-Term Performance Plan ("the IBM Plan"), dated May 7, 2002 as amended through August 1, 2007, the various Equity Award Agreements ("EAA") executed during the course of Defendant's employment at IBM, and the Terms and Conditions of "Your Equity Award: Effective June 8, 2011" ("Terms and Conditions").

5. Venue is proper in this Judicial District by Plaintiff's headquarters' residence, the parties' agreements and defendant's consent in the aforementioned IBM Plan, the EAA, and Terms and Conditions.

## NATURE AND BACKGROUND OF THE ACTION

6. This is an action for monies due and owing to IBM by defendant as a result of the rescission by IBM of the stock options and equity awards (collectively "Awards"), previously granted defendant as further described herein.

7. During all relevant times herein, Johnson was a participant in the IBM Plan.

8. As stated in Section 1 thereof, termed "Objectives," the IBM Plan is "designed to attract, motivate and retain selected employees of, and other individuals providing services to, the Company. These objectives are accomplished by making long-term incentive and other awards under the Plan, thereby providing Participants with a proprietary interest in the growth and performance of the Company."

9. Defendant terminated his employment with IBM on or about December 17, 2012.

10. Shortly thereafter, Defendant commenced employment with Ernst & Young ("EY"), on information and belief, in December, 2012, and is a Principal in EY's National Advisory Practice, Enterprise Intelligence, Analytics.

2

11. EY is engaged in business activity which is competitive with Plaintiff.

**Contractual Grounds for**
**Rescission of Grants and Awards**

12. During his employment with IBM Plaintiff was given the opportunity to receive Awards under the terms and conditions of the IBM Plan, the EAA, and the Terms and Conditions cited in paragraph 4 hereto, and further described herein, and in fact did receive awards as further described herein.

13. As a result of his employment by EY, IBM is entitled to Cancel and Rescind Awards paid to Defendant, and has so rescinded these Awards.

14. As stated in relevant part in Section 13(a) of the IBM Plan, entitled "Cancellation and Rescission of Awards":

> Unless the Award Agreement specifies otherwise, the Committee may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, or if the Participant engages in any 'Detrimental Activity.' For purposes of this Section 13, "Detrimental Activity" shall include: (i) the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes <u>competitive</u> with the Company, or which organization or business, or the rendering of services to such organization or business, is or becomes otherwise prejudicial to or in conflict with the interests of the Company; (ii) the disclosure to anyone outside the Company, or the use in other than the Company's business, without prior written authorization from the Company, of any confidential information or material, as defined in the Company's Agreement Regarding Confidential Information and Intellectual Property, relating to the business of the Company, acquired by the Participant either during or after employment with the Company; . . . (vi) any attempt directly or indirectly to induce any employee of the Company to be employed or perform services elsewhere, or any attempt directly or indirectly to solicit the trade or business of any current or prospective customer, supplier or partner of the Company; . . . ." (emphasis supplied).

15. In addition, Section 13(b) of the IBM Plan provides, in relevant part, that:

> Upon exercise, payment or delivery pursuant to an Award, the Participant shall certify in a manner acceptable to the Company that he or she is in compliance with the terms and conditions of the Plan. In the event a Participant fails to comply with the provisions of paragraphs (a)(i)(viii) of this Section 13 prior to, or during the Rescission Period, then any exercise, payment or delivery may be rescinded within two years after such exercise, payment or delivery. In the event of any such rescission, the Participant shall pay to the Company the amount of any gain realized or payment received as a result of the rescinded exercise, payment or delivery, in such manner and on such terms and conditions as may be required, and the Company shall be entitled to set-off against the amount of any such gain any amount owed to the Participant by the Company.

16. The various EAA executed by Defendant during the course of his employment by IBM provide, inter alia, in a paragraph titled "Cancellation and Rescission" that "IBM may cancel, modify, rescind, suspend, withhold or otherwise limit or restrict this Award in accordance with the terms of the Plan, including, without limitation, canceling or rescinding this Award if you render services for a competitor prior to, or during the Rescission Period. You understand that the Rescission Period that has been established is 12 months."

17. As a condition of accepting his Awards, Johnson further agreed under the terms of the EAA in a paragraph titled "Accept Your Award" "that by your acceptance of this Award, all Awards previously granted to you under the Plan or other Long-Term Performance Plans are subject to the "Cancellation and Rescission" section of this Agreement. . . ."

18. The EAA states that "Your participation in the Plan is voluntary."

4

19. The Terms and Conditions stipulates that "You agree that the cancellation and rescission provisions of the Plan and your Equity Award Agreement are reasonable and agree not to challenge the reasonableness of such provisions, even where forfeiture of your Award is the penalty for violation."

20. The EAA by its terms incorporates both the Terms and Conditions and the IBM Plan into the Award.

### The Grant of Options and Awards

21. Defendant was granted and received stock options and restricted stock unit ("RSU") awards under the IBM Plan and the various Equity Award Agreements executed by Defendant during his employment with IBM, all of which became subject to the Cancellation and Rescission terms of the IBM Plan and the various EAA he executed during his employment.

22. Defendant exercised 500 stock options on December 3, 2012.

23. The value of these stock options when exercised resulted in a gain to Defendant in the amount of $47,795.

24. In addition, Defendant exercised 2,050 stock options on September 17, 2012.

25. The value of these stock options when received was $298,377.50

26. Defendant also exercised 139 RSUs on June 8, 2012.

27. The value of these RSUs when received was $26,954.88.

28. Defendant further exercised 122 RSUs on June 8, 2012.

29. The value of these RSUs when received was $23,658.24.

30. Defendant further exercised 98 RSUs on June 8, 2012.

31. The value of these RSUs when received was $19,004.16.

32. Defendant further exercised 234 RSUs on May 8, 2012.

33. The value of these RSUs when received was $47,122.92.

34. These options and awards were received within the 12-month Rescission Period set forth in the various EAA Defendant executed during his employment.

35. The total value of the gain received by Defendant from these Awards during the Rescission Period and subject to rescission is $462,912.70.

**Agreement to Jurisdiction and Venue and Reimbursement of IBM Legal Fees and Costs**

36. Recipients of these Awards under the IBM Plan, Section 15(e) thereof, agree to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve any and all issues that may arise out of or relate to the Plan and the EAA.

37. Similarly, the Terms and Conditions document incorporated into the EAA, and referred to in paragraph 19 hereof, specifies the same jurisdiction and venue.

38. The IBM Plan specifies in Section 15(f) thereof, that if IBM prevails in an action to enforce the IBM Plan, the Plan participant such as Johnson "shall pay all costs and expenses incurred by the Company in connection with that action, including reasonable attorneys' fees . . . ."

39. Similarly, the "Terms and Conditions" document incorporated into the EAA, and referred to in paragraph 19 hereof contains the same language regarding costs, expenses and fees.

**Notice of Rescission**

40. As noted above, Johnson's employment with EY constitutes Detrimental Activity under the IBM Plan as more fully stated in paragraph 14 hereof.

41. By virtue of Johnson's employment with EY within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM is entitled to and did rescind any awards made to Johnson during such 12-month period.

42. By letter dated April 30, 2013, IBM put Johnson on notice it rescinded the gains he received when he exercised the Awards stated in paragraphs 22 through 32 thereof within the 12 months preceding his employment by EY, in the amount of $462,912.70.

43. The letter stated in bold emphasis **"You are required to repay to IBM your gain equal to $462,912.70."** It further stated a payment expectation date of May 27, 2013.

44. Johnson has failed and refused to make the requested payment to IBM, though duly demanded.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

45. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 44 hereof, inclusive, as though more fully stated herein.

46. On December 17, 2012, Johnson voluntarily terminated his employment with IBM.

47. Under the explicit terms of the IBM Plan, if Defendant chose to join a competitor of IBM within the Rescission Period of the EAA, he would forfeit the monetary value of all Awards under the IBM Plans.

48. The Rescission Period established under various EAA Defendant executed during his employment at IBM was 12-months "after any exercise, payment or delivery pursuant to an Award".

49. Defendant was aware of this rescission provision at the time he resigned employment at IBM and became employed by EY.

50. Johnson commenced employment with EY shortly after his resignation from IBM, on information and belief, in or about December, 2012, and therefore within the Rescission Period of 12-months after the acceptance of his grants and awards commencing in May, 2012 as further detailed above.

51. EY is a competitor of IBM.

52. Defendant's employment with EY constitutes Detrimental Activity under Section 13(a)(i) of the IBM Plan.

53. By virtue of Defendant's employment with EY within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM was entitled to and did rescind any Awards to Johnson during such period.

54. Thus, by letter dated April 30, 2013, IBM put Defendant on notice that all Awards exercised and received within the 12 months preceding his engaging in "Detrimental Activity" were subject to rescission in the amount of $462,912.70.

55. IBM therein made due demand for payment by Defendant in the amount of $462,912.70, representing the total amount gained by Johnson through the aforesaid stock option exercises and awards as stated herein.

56. Defendant has failed and refused to make the requested payment to IBM, though duly demanded by IBM.

57. Accordingly, there is due and owing from Defendant to IBM the amount of $462,912.70.

58. Defendant has further contractually agreed to pay all costs and expenses incurred by IBM in connection with it prevailing in an action to enforce the IBM Plan.

59. Accordingly, upon IBM prevailing in this action, such costs, expenses and fees shall be paid by Defendant to IBM.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant in the amount of $462,912.70, as well as costs, interest, and attorneys' fees in an amount to be determined by the Court, and such other, further and different relief this Court deems just and proper.

Dated:  New York, New York
        August 14, 2014

                                      PUTNEY, TWOMBLY, HALL & HIRSON LLP
                                      Attorneys for Plaintiff

                                      By: _____
                                      Jerome P. Coleman (JC7818)
                                      A member of the firm
                                      521 Fifth Avenue
                                      New York, NY 10175
                                      (212) 682-0020